No. 13-1874

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

————————————

### UNITED STATES OF AMERICA,
### APPELLEE

#### v.

### DAVID L. TOPPIN,
### DEFENDANT-APPELLANT

————————————

### ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
### ENTERED IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

————————————

### BRIEF FOR THE UNITED STATES

————————————

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

CHRISTINE J. WICHERS
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3278

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.....................................................................i

TABLE OF AUTHORITIES ........................................................ ii

STATEMENT OF JURISDICTION. ...........................................1

STATEMENT OF ISSUES ..........................................................1

STATEMENT OF THE CASE........................................................2

    1.  Statement of Facts ........................................................2

    2.  Procedural History........................................................10

SUMMARY OF ARGUMENT .....................................................11

ARGUMENT ...............................................................................13

    I.    The District Court Properly Refused to Dismiss the Indictment ............13

    II.   The Government's Reference in Its Opening Statement to Toppin's Mental Health Defense Was Not Reversible Error.................................22

    III.  The District Court Properly Instructed the Jury......................................29

    IV.  The Government Did Not Misstate the Evidence Relating to Toppin's Good-Faith Belief Defense ........................................33

CONCLUSION ...........................................................................39

CERTIFICATE OF COMPLIANCE.............................................40

CERTIFICATE OF SERVICE ......................................................41

i

## TABLE OF AUTHORITIES

### CASES

*Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1 (1916)................................30

*Bryan v. United States*, 524 U.S. 184 (1998).......................................31, 32

*California Bankers Association v. Shultz*, 416 U.S. 21 (1974)..............................20

*Cheek v. United States*, 498 U.S. 192 (1991) .....................................31, 37

*Martin v. Commissioner of Internal Revenue*, 756 F.2d 38 (6th Cir. 1985) ..........30

*Olszewski v. Spencer*, 466 F.3d 47 (1st Cir. 2006)...................................36

*Parker v. State*, 588 S.E.2d 683 (Ga. 2003)............................................28

*Puerto Rico Telephone Co. v. T-Mobile Puerto Rico LLC*, 678 F.3d 49
(1st Cir. 2012) ...........................................................................21

*United States v. Allen*, 670 F.3d 12 (1st Cir. 2012)............................................32, 37

*United States v. Beale*, 574 F.3d 512 (8th Cir. 2009)..............................................17

*United States v. Bowers*, 920 F.2d 220 (4th Cir. 1990).........................................20

*United States v. Cavins*, 543 F.3d 456 (98th Cir. 2008).........................................15

*United States v. Clemens*, 738 F.3d 1 (1st Cir. 2013)..............................................13

*United States v. Condo*, 741 F.2d 238 (9th Cir. 1984) ...........................................17

*United States v. Crooker*, 688 F.3d 1 (1st Cir.),
*cert. denied,* 133 S. Ct. 772 (2012) ...........................................................14

*United States v. Diaz*, 670 F.3d 332 (1st Cir. 2012),
*cert. denied*, 134 S. Ct. 1329 (2014)..................................................................13

*United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013) ..........................................14

*United States v. Ferris*, 807 F.2d 269 (1st Cir. 1986) .............................................18

*United States v. Hall*, 165 F.3d 1095 (7th Cir. 1999).............................................28

*United States v. Hogan*, 722 F.3d 55 (1st Cir. 2013)..............................................13

*United States v. Kasenge*, 660 F.3d 537 (1st Cir. 2011),
*cert. denied*, 132 S. Ct. 1649 (2012)........................................................................35

*United States v. Koliboski*, 732 F.2d 1328 (7th Cir. 1984).....................................16

*United States v. Latham*, 754 F.2d 747 (7th Cir. 1985)..........................................17

*United States v. Lussier*, 929 F.2d 25 (1st Cir. 1991).............................................16

*United States v. Maldonado*, 708 F.3d 38 (1st Cir. 2913) ......................................38

*United States v. Meadows*, 571 F.3d 131 (1st Cir. 2009) ...........................29, 30, 31

*United States v. Mehanna*, 735 F.3d 32 (1st Cir. 2013),
*petition for cert. filed* (Mar. 17, 2014) (13-1125)..............................................30, 32

*United States v. Mersky*, 361 U.S. 431 (1960)........................................................20

*United States v. Pagan-Ferrer*, 736 F.3d 573 (1st Cir. 2013),
*petition for cert. filed* (Feb. 14, 2014) (13-8744)....................................................14

*United States v. Pakala*, 568 F.3d 47 (1st Cir. 2009) .............................................19

*United States v. Rice*, 659 F.2d 524 (5th Cir. 1981)...............................................17

*United States v. Rodriguez*, 675 F.3d 48 (1st Cir. 2012)...................................25, 26

iii

*United States v. Schiefen*, 139 F.3d 638 (8th Cir. 1998) .........................................21

*United States v. Stewart*, 744 F.3d 17 (1st Cir. 2014) ....................................15, 18

*United States v. Strong*, 724 F.3d 51 (1st Cir.),
*cert. denied*, 134 S. Ct. 702 (2013) ..........................................................14

*United States v. Walls*, 546 F.3d 728 (6th Cir. 2008)............................................21

*United States v. Washington*, 947 F. Supp. 87 (S.D.N.Y. 1996)............................20

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
529 U.S. 765 (2000)........................................................................22

## STATUTES

Bank Secrecy Act of 1970, 12 U.S.C. §§ 1730d, 1829b, 1951-1959,
and 31 U.S.C. §§ 1051-1062, 1081-1083, 1101-1105, 1121-1122 ........................20

12 U.S.C. § 1829b(b)(1) ..........................................................................20

18 U.S.C. § 3231 ..............................................................................1, 16

19 U.S.C. § 1304................................................................................20

26 U.S.C. § 1......................................................................................30

26 U.S.C. § 61....................................................................................31

26 U.S.C. § 63................................................................................ 30-31

26 U.S.C. § 6531(2) ..............................................................................18

26 U.S.C. § 7201 ........................................ 11, 12, 13, 15, 16, 19, 21

26 U.S.C. § 7343................................................................................17

26 U.S.C. § 7701(a)(1)...................................................................... 16-17

28 U.S.C. § 1291 ...............................................................................1

44 U.S.C. § 1505(a)(1)......................................................................21

## R<small>ULES</small>

Fed. R. Crim. P. 12(b).......................................................................14

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over the case because the indictment charged the defendant, David L. Toppin, with an offense against the United States.  18 U.S.C. § 3231.  The Judgment in a Criminal Case was docketed on June 27, 2013, [D.242],[1] and Toppin filed a timely notice of appeal on July 5, 2013 [D.246].   This Court has jurisdiction over Toppin's appeal from his conviction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      The district court properly refused to dismiss the indictment.

2.      The government's reference in its opening statement to Toppin's mental health defense was not reversible error.

3.      The district court properly instructed the jury.

4.      The government did not misstate the evidence relating to Toppin's good-faith belief defense.

---

[1]Citations are as follows:  Docket entries are cited as "D.__."  Toppin's brief is cited as "Brief at __."  The government's appendix is cited as "G.App.__."  This brief does not cite to pages in Toppin's appendix because Toppin did not number the pages in his appendix.  Trial exhibits are cited as "Ex. __."

1

## STATEMENT OF THE CASE

1.     **Statement of Facts**.

      a.     **The government's case.**

At trial, the government presented evidence from which the jury could have found the following:

For the period 1997 to 1999, Toppin was the president, sole owner, and sole employee of Pelletizer Group, Inc., a company engaged in buying and selling plastics-related machinery that Toppin founded in 1990 and incorporated in 1996. [G.App.276-79, 539].   Since at least 1996, Toppin also ran a small Amway distributorship called Toppin Enterprises out of his home.   [G.App.150, 317]. Toppin was married to Jennifer Toppin ("Jennifer").   [G.App.538].   When they married in 1993, Jennifer had no significant assets.   [G.App.538-39].   After that time, Jennifer was predominantly a stay-at-home mother and Toppin was the primary source of all family income and assets.  [G.App.302, 458, 462-64, 677].

Toppin filed federal personal income tax returns for 1990 and 1992-1994. [G.App.148-50].  In 1998, he asked a certified public accountant ("CPA"), Patricia Hall Strong, to prepare Forms 1040 for 1996 and 1997.  [G.App.271-73, 275-76]. The returns Strong prepared showed a tax liability of over $100,000 for 1996 and 1997 for Toppin and Jennifer.  [G.App.211-13, 272-75].  When Strong gave the

returns to Toppin in April 1998, he became upset.  [G.App.291].   He was "adamantly not thrilled with paying taxes."  [G.App.290].  Toppin also may have said that he did not believe in paying taxes [G.App.294-95], even though he had just filed a Form 1040 in August 1997 (for tax year 1994) and had paid the taxes due plus penalties and interest.  [G.App.149-50].

Toppin never filed the returns Strong prepared, although he did later submit them in support of an application for a mortgage.  [G.App.211-13].  Due to Toppin's failure to file these and other, subsequent returns, the IRS sent him many notices for the overdue returns.  [G.App.186-89].  When Toppin did not respond, an IRS revenue officer was assigned to his case.  [G.App.408-410].  In June 2002, Revenue Officer John Disher notified Toppin's accountant and power of attorney, James Powers, that Toppin's "personal 1040 filing situation remains unresolved." [G.App.408-410].

Following this notice, Toppin began engaging in a series of actions to evade his tax obligations.  These actions fell into three categories: (1) transferring real estate into his wife's name; (2) banking under his wife's name; and (3) filing a Form 433-A containing numerous false and misleading statements regarding his ability to pay his overdue taxes.

### i.     Real estate transfers.

Before the IRS began its collection efforts, Toppin and his family lived in a large house on Cape Cod at 483 Phinney's Lane in Centerville. [G.App.598]. Toppin bought the house in 1998 and both the deed and the mortgage were in his name alone. [G.App.598]. On July 24, 2002, however, just weeks after the IRS sent its notice to Toppin's accountant, Toppin transferred the title from himself to himself and Jennifer for $1, and, later that same day, sold the house for $1.2 million. [G.App.598]. Proceeds from the sale were used to buy the family's new home in Holden, Massachusetts for $540,000 cash on August 12, 2002, which was put in Jennifer's name. [G.App.464, 475-76, 479, 539-40, 598-99].

Two further real estate transfers to Jennifer occurred in 2003. First, on July 14, 2003, Toppin bought a rental property in Amherst, Massachusetts from his parents for $165,000 and put the title in Jennifer's name. [G.App.479, 539-40, 599].[2] The evidence showed, however, that Toppin alone oversaw the management of the property and that checks were sent to Toppin at his work address, although they were made out to Jennifer. [G.App.239-47]. Then, on August 21, 2003, Toppin bought an industrial property at 4 LaChance Street in

---

[2]Before the IRS began its collection efforts, Toppin's parents owned the rental property, which Toppin and his father had bought in 1985 and which, in 1990, had been transferred to Toppin's father and mother for $1. [G.App.599].

Gardner for $210,000.  [G.App.599].  Toppin put the deed in Jennifer's name even though he used the property to operate Pelletizer Group and Jennifer had nothing to do with the property.  [G.App.479, 539-40, 599].  Toppin arranged for Pelletizer Group to pay Jennifer rent.  [G.App.470, 588-90].

### ii.    Bank accounts.

In August 2002, just two months after Toppin learned that the IRS had assigned a revenue officer to his case, he moved several bank accounts into Jennifer's name.  Prior to that time, Toppin held four joint checking accounts with Jennifer at Rockland Trust.  [G.App.548-49].  Toppin used the first one primarily as his account; he referred to the second as Jennifer's "spending money account"; the third was called the "real estate account"; and the fourth was associated with Toppin Enterprises.  [G.App.541].  Toppin freely used all four accounts. [G.App.545-47; Ex.78-81].

Following the July 2002 move to Holden, the Rockland Trust accounts were closed and four new checking accounts were opened at Clinton Savings Bank. [G.App.548-49, 551-52].  The four new accounts were generally assigned the same purposes – Toppin's account, Jennifer's account, real estate, and Toppin Enterprises – but only the first account was joint; the other three accounts were in

Jennifer's name alone.  [G.App.551-52, 593-96].  In addition, the names on the checks were changed to reference Jennifer, rather than Toppin.[3]

Although three of the new accounts were solely in Jennifer's name, Toppin freely used all of the accounts, signing checks and endorsing deposits, sometimes using Jennifer's  name.  [G.App.327, 540-41, 556-90].  Significantly, the Clinton Savings Bank account with the largest balance – a one-time maximum of $266,699 – was in Jennifer's name alone.  [G.App.594-95].  The maximum balance in the one account bearing Toppin's name was $12,653.  [G.App.593-94].[4]

### iii.    False and misleading Form 433-A.

In 2004, Toppin's collection case was transferred to a new IRS Revenue Officer, Donald Richardson.  [G.App.423].  Toppin and Powers subsequently told Richardson that Toppin intended to file his delinquent returns and would extend an Offer in Compromise, *i.e*., a settlement offer.  [G.App.426-27].  To ensure that the IRS has an accurate picture of the taxpayer's ability to pay, any Offer in

---

[3]For example, the Rockland Trust checks for the real estate account read "David L. Toppin, Real Estate Account" whereas the Clinton Savings Bank checks for that account read "Jennifer Toppin, RE Account."  [G.App.595].  Likewise, the Rockland Trust checks for the Toppin Enterprises account read "TOPPIN ENTERPRISES" while the Clinton Savings Bank checks read, "Jennifer Toppin, TE Account."  [G.App.596].

[4]By contrast, the Rockland Trust account with the largest balance – reaching a maximum of $554,310 – had Toppin's name on it.  [G.App.593].

Compromise must be accompanied by a Form 433-A Collection Information Statement, in which the taxpayer fairly and accurately reports his assets, liabilities, income, and expenses.  [G.App.166-72, 309-400, 444-45].

When Toppin failed to provide the promised Offer in Compromise, Richardson, in December 2004, summonsed Toppin to appear with documents reflecting all assets and liabilities that he owned or which were held for his benefit. [G.App.444-45].  The summons explained that Richardson sought the documents to prepare a Form 433-A to determine how much Toppin could pay of the taxes which the IRS had estimated that he owed for 1997-1999.  [G.App.444-45]. Instead of appearing, however, Toppin completed a Form 433-A, signed on December 20, 2004 under penalty of perjury, and mailed it to Richardson. [G.App.449-50].  Toppin's answers in the Form 433-A were misleading and deceptive in numerous respects.  Among other things, Toppin:

- Denied owning any real estate.  When asked whether he owned his home, rented, or "other," Toppin checked the box for "other" and wrote, "LIVE WITH RELATIVE";

- Denied being self-employed or operating his own business, identifying himself as a "manager" of Pelletizer Group, Inc.;[5]

_____

[5]While Toppin acknowledged in another section that he owned "all shares" of Pelletizer Group, he represented the value of the company to be only $5,000. [Ex.121].  He made this representation even though in 1998, when Pelletizer was a

- Denied receiving any rental income;

- Represented that his only checking account was his and Jennifer's joint account at Clinton Savings Bank, with a balance of $100;

- Answered "no" to the question, "In the past 10 years did you transfer any assets out of your name for less than their actual value?";[6]

- Listed the value of his personal assets as just $4,000[7] and listed no value for his business assets; and

- Represented that his monthly income was $4,666, although he later acknowledged, when his 2004 return was eventually filed, that in 2004 he had monthly income of $6,261.

[G.App.451-54, 457; Ex.121].

Toppin's false and misleading representations on the Form 433-A successfully deceived the IRS regarding his financial position. When Richardson read Toppin's completed form, his impression was that Toppin had little to no ability to pay his delinquent taxes. [G.App.458-59].

---

younger, less developed company, he had represented on a mortgage application that its value was $300,000. [G.App.207].

[6]Toppin did not offer that, just two years earlier, he had transferred half his interest in the $1.2 million Cape Cod house to his wife for just $1. [G.App.598].

[7]By contrast, Toppin's 1998 mortgage application said he owned personal property worth $1.5 million [G.App.208], and, in 2003, Jennifer represented on a loan application that she had $150,000 in personal property [Ex.90; G.App.268, erroneously transcribed as "450,000"].

8

Eventually, in December 2006, Toppin filed his Form 1040 returns for 1997-1999. [G.App.137, 140]. Toppin signed each one under penalty of perjury and, in the returns, admitted owing $86,909 for 1997; $139,208 for 1998; and $1,082 for 1999. [G.App.136-42]. Toppin also filed signed, sworn Form 1040 returns admitting that he owed taxes for 2000-2005. [G.App.150-51, 541-42]. In August 2007, Toppin filed a signed, sworn Form 1040 return admitting that he owed taxes for 2006. [G.App.150-51, 541-42]. As of the trial date, however, Toppin had not paid any of the income taxes he admitted owing for tax years 1997-2006. [G.App.151].

### b.    Toppin's defense.

Toppin did not testify at trial.[8]  He called only one witness, psychologist Daniel Kriegman, Ph.D., who opined that Toppin suffered from a delusional disorder. [G.App.675-85]. Specifically, Dr. Kriegman testified:

> The delusion is that the world is going to accommodate to David Toppin, that if he sees something and he understands it, he can express it, if push comes to shove, in a way that's going to force people to see that he is right and to accommodate to his beliefs that -- he stopped paying his

---

[8]While Toppin did not testify, the jury heard excerpts of his grand jury testimony, which were introduced by the government. In the excerpts, Toppin claimed that he did not pay income taxes because he believed he was not a citizen of the "United States" as that term is defined in the Tax Code – although he was born, lived, and worked in Massachusetts. [G.App.538, 542-43].

> taxes. Didn't really want to go through a hearing like this, so he didn't advertise it to the world. He kept it to himself. But he was prepared, if confronted, to come in and argue that his belief – on his belief and that he would win the argument. This is the delusion, that he will win the argument and that the United States of America will say, Dave Toppin, you don't have to pay taxes because you're right. The Constitution doesn't justify the tax code as it is.

[G.App.678].

In his closing, Toppin argued that his actions did not reflect a willful attempt to evade paying income taxes. [G.App.738, 740]. Instead, he argued that, as a result of a delusional disorder, he held a good-faith belief that he did not owe the taxes. [G.App.726-27, 738-40]. The jury, however, rejected this defense and found Toppin guilty. [D.198].

## 2. **Procedural History**.

On November 30, 2010, Toppin signed an agreement tolling the statute of limitations from that date through June 1, 2011. [G.App.41-42].

On June 1, 2011, Toppin, who was represented by counsel and knew that he was the target of the grand jury's investigation, chose to testify before a federal grand jury sitting in the District of Massachusetts. [G.App.536]. The same day, the grand jury issued an indictment charging Toppin with one count of evading the

payment of federal income taxes for 1997-1999, in violation of 26 U.S.C. § 7201. [G.App.35-40].[9]

On June 22, 2012, following pretrial proceedings before District Court Judge Saylor, the case was transferred to newly elevated District Court Judge Hillman, who had handled the case as a Magistrate Judge. [G.App.12]. The case was tried to a jury on January 28-31, 2013 (Hillman, J. presiding). [D.192-194, D.197]. On January 31, 2013, the jury returned a verdict of guilty. [D.198].

Following the denial of various post-trial motions, the district court sentenced Toppin to 36 months' imprisonment, followed by two years of supervised release, plus payment of $716,479 in restitution. [D.238].

## SUMMARY OF ARGUMENT

1.    The district court properly refused to dismiss the indictment because, contrary to Toppin's arguments: (a) the indictment properly notified Toppin of the tax he was accused of evading; (b) the court had subject matter jurisdiction; (c) Toppin is a "person" as that term is defined in 26 U.S.C. § 7201; (d) the indictment

---

[9]Although Toppin was represented by counsel at the time of his grand jury appearance, he appeared *pro se* at his initial appearance and arraignment on July 13, 2011, and remained *pro se* until June 14, 2012, when an attorney appeared on his behalf. [G.App.4; D.72]. The attorney briefly withdrew in November 2012, then appeared again on Toppin's behalf approximately 10 days later. [*See* D.130, D.160].

alleged acts occurring within the six-year limitations period; (e) Section 7201 does not require the issuance of implementing regulations; and (f) Toppin's argument that the government lacked standing to prosecute him, if not waived, is meritless.

2.    The government's reference in its opening statement to the possibility that Toppin would call a psychologist to testify that Toppin suffered from delusional disorder was not reversible error because Toppin did call the psychologist as a witness and he does not argue that he felt the government's statement compelled him to do so.  Moreover, the government's statement was brief; it followed a cautionary instruction by the court; it did not undermine the presumption of innocence; and it merely put the anticipated evidence in context.

3.    The jury instructions were not erroneous.  The district court properly instructed the jury (a) that people generally must pay taxes on their income from whatever source derived, and (b) that the government had to prove that Toppin knew he had a legal duty to pay income taxes.

4.    The government did not misstate the evidence relating to Toppin's defense that he held a good-faith belief that the Tax Code did not apply to him. The government's comments in its opening and closing were not inconsistent with an out-of-court statement by government witness Patricia Hall Strong, assuming for the sake of argument that such consistency was required.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY REFUSED TO DISMISS THE INDICTMENT.

### (Toppin's Arguments One through Five, and Nine)

On appeal, Toppin resurrects five legal arguments that he raised in unsuccessful pretrial motions: (1) that the indictment was legally deficient because it did not identify what type of tax he allegedly evaded; (2) that the district court lacked subject matter jurisdiction; (3) that Toppin is not a "person" as that term is used in 26 U.S.C. § 7201; (4) that he was indicted after the expiration of the statute of limitations; and (5) that 26 U.S.C. § 7201 is invalid without the issuance of implementing regulations. (Brief at 5-6, 7, 8-12, 13, 14-15). Toppin also argues for the first time on appeal that the government lacked standing to prosecute him. (Brief at 22). Toppin's arguments are meritless.

### A. Standard of Review

This Court examines purely legal questions de novo. *United States v. Hogan*, 722 F.3d 55, 59 (1st Cir. 2013). This includes legal challenges to an indictment, *United States v. Clemens*, 738 F.3d 1, 12 (1st Cir. 2013), claims regarding subject matter jurisdiction, *United States v. Diaz*, 670 F.3d 332, 339 (1st Cir. 2012), *cert. denied*, 134 S. Ct. 1329 (2014), statute of limitations claims,

13

*United States v. Fernandez*, 722 F.3d 1, 27 (1st Cir. 2013), and matters of statutory interpretation, *United States v. Strong*, 724 F.3d 51, 55 (1st Cir.), *cert. denied*, 134 S. Ct. 702 (2013).

As a general matter, arguments raised for the first time on appeal are reviewable only for plain error, which imposes on the defendant "the burden of showing that: an error occurred, which was clear or obvious, and which not only affected the defendant's substantial rights, but also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pagan-Ferrer*, 736 F.3d 573, 593-94 (1st Cir. 2013) (internal quotation marks and citation omitted), *petition for cert. filed* (Feb. 14, 2014) (13-8744). Pursuant to Fed. R. Crim. P. 12(b), however, certain matters must be raised prior to trial or they will be deemed waived. *See United States v. Crooker*, 688 F.3d 1, 9-10 (1st Cir.), *cert. denied*, 133 S. Ct. 772 (2012).

### B. Toppin's Motions to Dismiss Were Properly Denied.

Prior to trial, Toppin filed numerous motions challenging his indictment, all of which were denied. [*See generally* G.App.4-18]. Toppin contests the disposition of several such motions, but his arguments are wholly without merit.

14

### 1.     The indictment charged Toppin with a crime.

Toppin argued unsuccessfully below that the indictment was legally deficient because "[n]owhere is there any statutory authority offered in support for the legal conclusion that [Toppin] has a requirement to pay any money to the federal government."  [D.32 at 2].  On appeal, Toppin revisits this argument, noting that 26 U.S.C. § 7201 makes it a crime to "willfully attempt[] in any manner to evade or defeat any tax imposed by this title or the payment thereof," and arguing that the indictment did not identify what "tax imposed by this title" he evaded.  (Brief at 5-6.)  This contention is frivolous.  The indictment informed Toppin that he was accused of evading the payment of federal income taxes – specifically, for tax years 1997-1999.  [G.App.35-40].  This was sufficient to apprise Toppin of the charge against him.  *See United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) ("[A]n indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy.") (internal quotation marks and citation omitted); *United States v. Cavins*, 543 F.3d 456, 458 (8th Cir. 2008) (same; holding that indictment charging defendant with violation of 26 U.S.C. § 7201 was sufficient).

15

## 2.    The court had subject matter jurisdiction.

Toppin filed several pretrial motions arguing that the district court lacked subject matter jurisdiction.  [D.6 at 11-13; D.22; D.31 at 1-4; D.47 at 4].  The district court denied each of these motions.  [G.App.6 (denying D.6, D.22), 8 (denying D.31), 10 (denying D.47)].  On appeal Toppin resurrects this argument, (Brief at 7), maintaining that 18 U.S.C. § 3231 confers jurisdiction only over crimes prohibited in Title 18 of the United States Code, not Title 26.  "Courts too numerous to enumerate have rejected this silly claim."  *United States v. Koliboski*, 732 F.2d 1328, 1329 (7th Cir. 1984).  These include the First Circuit.  *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991) ("18 U.S.C. § 3231 … gives the district court subject matter jurisdiction over 'all offenses against the laws of the United States.'  This category of offenses obviously includes the crimes defined in Title 26.").

## 3.    Toppin is a person for purposes of 26 U.S.C. § 7201.

Toppin filed several pretrial motions arguing that he is not a "person" as that term is defined in 26 U.S.C. § 7201, [D.31 at 6-7, 9; D.47 at 4; D.96], each of which was denied.  [App.8 (denying D.31), 10 (denying D.47); D.16 (denying D.96)].  Toppin's attempt to revisit this issue on appeal, (Brief at 8-12), should be summarily rejected.  The term "person" for purposes of Title 26 is defined in §

7701(a)(1), which states: "When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof … [t]he term 'person' shall be construed to mean and include *an individual*, a trust, estate, partnership, association, company or corporation." 26 U.S.C. § 7701(a)(1) (emphasis added).

The term is further defined in Section 7343, which states: "The term 'person' as used in this chapter includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Toppin contends that he is not a "person" as that term is used in Section 7201 because he is not "under a duty to perform the act in respect of which the violation occurs." (Brief at 9). This argument is frivolous and has been rejected by every court to have examined it. *See, e.g., United States v. Beale*, 574 F.3d 512, 518 n.3 (8th Cir. 2009); *United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985) (describing the argument as "inane"); *United States v. Condo*, 741 F.2d 238, 239 (9th Cir. 1984); *United States v. Rice*, 659 F.2d 524, 528 (5th Cir. 1981).

**4.    The motion to dismiss on statute of limitations grounds was properly denied.**

On September 10, 2012, Toppin filed a motion to dismiss on the grounds that he was indicted after the expiration of the statute of limitations. [D.94]. The

17

district court denied Toppin's motion on October 23, 2012, and, while Toppin
resurrects his argument on appeal, (Brief at 13), it is unavailing.

The statute of limitations for tax evasion is six years, 26 U.S.C. § 6531(2),
and begins to run from "the date of the latest act of evasion." *United States v.
Ferris*, 807 F.2d 269, 271 (1st Cir. 1986). As Toppin acknowledges, he signed a
tolling agreement [G.App.41-42] pursuant to which his December 20, 2004 filing
of the Form 433-A containing false statements was within the statute of limitations.
(Brief at 13). Yet he nonetheless claims that the motion to dismiss was improperly
denied, because "[his] position is and always has been that the 433A [was] a
truthful and honest representation of his position at that particular moment in
time." (Brief at 13). This argument goes nowhere. For purposes of a motion to
dismiss, an indictment is sufficient if it alleges criminal acts within the limitations
period. *Stewart*, 744 F.3d at 22 (noting that, "[a]t the indictment stage, the
government need not 'show,' but merely must allege, the required elements,"
including an act within the limitations period). Toppin's indictment plainly did so,
alleging not only that Toppin made false statements in the Form 433-A in

18

December 2004, but also that he failed to file his 1997-1999 tax returns until 2006, and banked under his wife's name through 2009.  [G.App.35-38].[10]

### 5. Implementing regulations were not required.

Toppin also filed an unsuccessful pretrial motion arguing that 26 U.S.C. § 7201 is unenforceable, and therefore the indictment should be dismissed, because the Secretary of the Treasury has never enacted regulations implementing that statute.  [D.93, D.119].  Toppin's argument challenging that ruling, (Brief at 14-15), is groundless.  Section 7201 does not state that it requires implementing regulations.  It provides simply:  "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution."

---

[10]Toppin does not challenge the district court's denial of his Rule 29 motion and thus has waived any argument that the evidence at trial was insufficient to establish any act within the limitations period.  *See United States v. Pakala*, 568 F.3d 47, 57 (1st Cir. 2009) ("We have consistently held that arguments not raised in the initial appellate legal brief are considered waived.") (internal quotation marks and citation omitted).  In any event, any such argument could not succeed. As summarized above, the jury had ample evidence before it to reject Toppin's "position" that his answers in the Form 433-A were "a truthful and honest representation" of his financial circumstances at the time they were made.

In support of his position that Section 7201 requires implementing regulations, Toppin raises two arguments, neither of which has merit. First, he relies on two cases dealing with statutes that do require implementing regulations, unlike Section 7201. *See Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) (concerning the Bank Secrecy Act of 1970, 12 U.S.C. §§ 1730d, 1829b, 1951-1959, and 31 U.S.C. §§ 1051-1062, 1081-1083, 1101-1105, 1121-1122[11]); *United States v. Mersky*, 361 U.S. 431 (1960) (concerning the Tariff Act of 1930, 19 U.S.C. § 1304[12]). These cases are irrelevant. A defendant's "duty to pay [income] taxes is manifest on the face of the statutes, without resort to IRS rules, forms, or regulations." *United States v. Bowers*, 920 F.2d 220, 222 (4th Cir. 1990) (affirming conviction under 26 U.S.C. § 7201); *accord United States v. Washington*, 947 F. Supp. 87, 91 (S.D.N.Y. 1996) ("[T]he enforcement of 26 U.S.C. § 7201 does not require implementing regulations.").

---

[11]The Bank Secrecy Act states in relevant part: "Where the Secretary of the Treasury … determines that the maintenance of appropriate types of records and other evidence by insured depository institutions has a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, he shall prescribe regulations to carry out the purposes of this section." 12 U.S.C. § 1829b(b)(1).

[12]The Tariff Act states in relevant part: "The Secretary of the Treasury may by regulations-- (1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin … ; (2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article …." 19 U.S.C. § 1304(a)(1)-(2).

Second, Toppin cites 44 U.S.C. § 1505(a)(1), which states: "There shall be published in the Federal Register – (1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof." The plain language of Section 1505(a)(1) makes clear that it has no bearing in this case. Nothing in Section 1505(a)(1) requires the Secretary of the Treasury to enact regulations implementing 26 U.S.C. § 7201. Indeed, "44 U.S.C. § 1505(a) does not apply to criminal statutes passed by Congress." *United States v. Walls*, 546 F.3d 728, 740 (6th Cir. 2008); *accord United States v. Schiefen*, 139 F.3d 638, 639 (8th Cir. 1998) ("Federal Register notice requirements do not apply to federal criminal statutes"). Thus, this argument fails.

## C.     Toppin's standing argument, if not waived, is without merit.

Toppin's argument that the government lacked standing to prosecute him because "the indictment alleges no personal injury, damage, or violation of a constitutionally protected right," (Brief at 22), was not raised below and thus is reviewable only for plain error, if not waived entirely. Regardless, the argument is frivolous. To establish standing, a party must show (a) injury in fact, (b) causation, and (c) redressability. *See, e.g., P.R. Tel. Co. v. T-Mobile P.R. LLC*, 678 F.3d 49, 57 (1st Cir. 2012). Where, as here, the United States alleges "injury to its

21

sovereignty arising from violation of its laws," it alleges "injury in fact" sufficient to establish standing, including in "a criminal lawsuit by the Government." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).

## II. THE GOVERNMENT'S REFERENCE IN ITS OPENING STATEMENT TO TOPPIN'S MENTAL HEALTH DEFENSE WAS NOT REVERSIBLE ERROR.

### (Toppin's Argument Six)

Toppin also challenges the district court's ruling allowing the government to comment briefly on the anticipated testimony of a defense witness. (Brief at 16). Toppin fails to demonstrate that any error by the court affected the fairness of his trial. His argument is therefore unavailing.

### A. <u>Procedural History</u>

Prior to trial, Toppin notified the government that he intended to call an expert witness, psychologist Daniel Kriegman, Ph.D., to testify that Toppin suffered from delusional disorder, which would be relevant to Toppin's defense that he lacked the requisite intent to commit tax evasion. Toppin served the government with Dr. Kriegman's expert report. [D.92-1]. The government moved to exclude the proposed testimony of Dr. Kriegman. [D.92]. Following a *Daubert* hearing, [D.178], the court denied the government's motion on January 4, 2013. [D.180].

22

Prior to trial, the government asked the district court for permission to make a brief reference in its opening statement to Toppin's defense that he suffered from delusional disorder, to alert the jury "that this may be coming because it helps them to evaluate the evidence and put the evidence in context as it comes in." [G.App.45-48].  Toppin objected, saying that he might use the word "delusional" in his own opening statement but that he did not intend to mention Dr. Kriegman because he had not yet decided whether to call him as a witness, although "most likely" he would.  [G.App.45-49].  Toppin asserted a constitutional right to have the jury not hear anything about any defense during opening statements because he wanted to keep his options open as the case progressed.  [G.App.46].  The court indicated it probably would allow the government's request, but reserved ruling. [G.App.49].  Toppin then renewed his objection in writing, arguing that government commentary on his proposed defense would impermissibly intrude on his right not to mount a defense at all and to control when and whether to present this particular defense.  [D.191].  On the next trial day, the court heard further argument on the issue and asked the government to describe what it would say. [G.App.64-67].  The government explained that it would only briefly note that Toppin "may" introduce testimony of a psychologist addressing a delusional disorder, and that it would also mention that Toppin did not have to put on a

23

defense at all.   [G.App.66-67].   The court then stated that it would permit the government's comment but would give a cautionary instruction.  Toppin noted his objection.   [G.App.67].

Before the government gave its opening, the district court cautioned the jury that Toppin was presumed innocent unless and until the government proved him guilty beyond a reasonable doubt; that Toppin was not required to produce any evidence; and that the burden remained on the government at all times. [G.App.89-91].   In its opening statement, the government made the following statement regarding the probable testimony of Dr. Kriegman:

> I expect you may also hear a third explanation for the defendant's behavior.  A defense psychologist may testify that the defendant suffers from a delusional disorder; and because of this disorder, the defendant believes he's going to be exonerated, even though he knows that others taking his position that the Tax Code doesn't apply to them have been convicted.
>
> I'm not going to go into detail about the testimony; and as Judge Hillman has already instructed you, the defendant doesn't have to put on a defense at all, and that it's the government's burden to prove each and every element beyond a reasonable doubt.
>
> But you should be aware that you may hear such testimony so as the evidence of the defendant's actions and his intent come in you'll have the proper framework to evaluate that evidence.

[G.App.101-02].

In his opening statement, Toppin's counsel confirmed that the jury would hear evidence of a mental-health defense. He stated: "[Y]ou're going to hear evidence that Mr. Toppin is delusional about [his] beliefs, [and therefore] … he didn't willfully violate the law …." [G.App.106]. Counsel summarized Toppin's defense as follows: "[T]hat's the overview in the case, that he didn't act willfully." [G.App.106].

As anticipated, Dr. Kriegman testified for the defense. [G.App.664-95]. In his closing argument, Toppin relied heavily on Dr. Kriegman's testimony in support of his defense that he lacked the necessary *mens rea* to be convicted of willfully evading the payment of his taxes. [G.App.726-27, 738-40].

**B.     Standard of Review**

This Court reviews de novo whether an objected-to statement by a prosecutor was improper. *United States v. Rodriguez*, 675 F.3d 48, 61 (1st Cir. 2012). If the statement was improper, the Court "must then determine whether it resulted in prejudice to the defendant." *Id.* (internal quotation marks and citation omitted). For a statement to have been prejudicial, the Court must find that "the prosecutor's misconduct so poisoned the well that the trial's outcome was likely affected, thus warranting a new trial." *Id.* (internal quotation marks and citation

25

omitted). This determination involves a three-part test. "First, [the Court] determine[s] whether the prosecutor's conduct was isolated and/or deliberate; next, [the Court] consider[s] whether the trial court gave a strong and explicit cautionary instruction; and finally [the Court] determine[s] whether it is likely that any prejudice surviving the instruction could have affected the outcome of the case." *Id.* (internal quotation marks and citation omitted) (finding no prejudice where prosecutor's comment was brief; the judge gave a curative instruction; and "the evidence presented at trial was strong enough to establish that any ill effects which survived the curative instruction did not affect the outcome of the case").

### C.    The Government's Comment Was Not Reversible Error.

On appeal, Toppin argues that the district court erred in allowing the government to comment in its opening on his proposed defense, noting that he "had not fully decided" to employ the mental health defense at the time and claiming that the comment undermined the presumption of innocence and weakened his position by allowing the government to make him "appear 'crazy'" to the jury. (Brief at 16). This argument suffers from several flaws. To begin with, the record provides little support for Toppin's suggestion that the government's statement forced him into a defense that he would not otherwise have presented. As noted above, Toppin made clear pre-trial his intent to offer the

26

testimony of Dr. Kriegman in support of a mental health defense, and, although Toppin noted his constitutional right not to present a defense, [D.191], he did not suggest that he was unlikely to call Dr. Kriegman. On the contrary, Toppin clarified in his own opening that he did intend to present evidence of a delusional disorder. Nor did Toppin suggest at any later time, such as after the government rested, that Dr. Kriegman's testimony was not needed but that Toppin nonetheless felt compelled to call him in light of the government's opening statement.[13]

In addition, the government's statement, viewed in context, would not have been understood as undermining the presumption of innocence or as unfairly tarring Toppin as "crazy." The statement was brief, measured in tone and language, and sought merely to let the jury know that certain evidence might be presented later, so that evidence presented earlier in the case would be heard with this in mind. Coupled with the district court's instruction, it is difficult to believe that the jury would have heard it as Toppin suggests.

Further, Dr. Kriegman did, in fact, testify as the government suggested he might (and as the defense implied he would), and his testimony was relied on heavily by Toppin in his closing argument. Thus, this case does not present the

---

[13]The government also notes that presenting this information in its opening was not without risk for the government. Should Toppin have chosen not to present the defense, it could have made the government appear less credible.

concern, noted by other courts in discussing this type of testimony, that a defendant's case may be weakened if he ultimately fails to present a defense previewed by the government. *See United States v. Hall*, 165 F.3d 1095, 1115 (7th Cir. 1999) (expressing disfavor with a government reference in its opening argument to a potential alibi defense because, "when the prosecution raises the spectre of a flawed alibi *and the defendant chooses not to offer any alibi evidence*, it may well leave the jury with an unfavorable impression of the defendant") (emphasis added); *accord Parker v. State*, 588 S.E.2d 683, 685 (Ga. 2003) (citing *Hall* and concluding that "[c]omments by a prosecutor in opening statement regarding the defendant's anticipated evidence may constitute grounds for reversal *should the defense rest without presenting such evidence*") (emphasis added).

On these facts, the government's statement, even if allowed in error, did not amount to reversible error under this Court's three-part test. The statement was isolated, brief, and given only after obtaining the district court's permission. The statement was also accompanied by an instruction making clear that Toppin did not have any burden of proof. Finally, Dr. Kriegman did testify as stated and, as noted above, the government's evidence establishing that Toppin had in fact acted willfully was strong. In light of the foregoing, Toppin's right to a fair trial was not

prejudiced by the mere fact that the government provided a brief preview of Dr. Kriegman's testimony.

## III.   THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY.

### (Toppin's Argument Seven)

Toppin next argues that two of the district court's instructions misstated the applicable law.  (Brief at 17-19).  Toppin's arguments are unavailing given that the court's instructions were proper and, in the one instance in which he proposed an alternative below, his proffered instruction was legally incorrect.

### A.   <u>Standard of Review</u>

Jury instructions are reviewed for plain error if the defendant failed to preserve his objection at trial.  *United States v. Meadows*, 571 F.3d 131, 146 (1st Cir. 2009).  To preserve an objection, a defendant "must lodge a specific objection and state the grounds for the objection *after* the court has charged the jury and before the jury begins deliberations.   Objections registered during pre-charge hearings are insufficient to preserve the issue."  *Id.* (internal quotation marks and citation omitted).

This Court "will reverse a trial court's refusal to give a proffered jury instruction only if the proffered instruction is substantively correct, not otherwise covered in substance in the court's charge, and of sufficient import that its

omission seriously affects the defendant's ability to present his defense." *United States v. Mehanna*, 735 F.3d 32, 50 (1st Cir. 2013), *petition for cert. filed* (Mar. 17, 2014) (13-1125).

### B.   The District Court Properly Instructed the Jury Regarding the Obligation to Pay Taxes on Income.

In the first of his challenges to the jury instructions, Toppin argues that the trial court erred in telling the jury, "As a general rule, United States citizens and residents must pay taxes on their income from whatever source derived." (Brief at 17, citing G.App.758-59).  Relying primarily on *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1 (1916), Toppin claims this instruction was erroneous because the income tax is in reality an excise tax, and thus, for Toppin's income to have been taxable, he had to have engaged in "an excise taxable activity, or some sort of privileged occupation, not just earn private sector money in one of the several states." (Brief at 19).  Because Toppin did not raise this particular challenge at trial, it is reviewed for plain error, *Meadows*, 571 F.3d at 146, but would fail under any standard of review.  Courts have universally rejected the argument Toppin makes here.  *See, e.g., Martin v. Comm'r of Internal Revenue*, 756 F.2d 38, 40 (6th Cir. 1985) (citing cases).  Section 1 of Title 26 imposes a tax on the "taxable income" of all individuals; "taxable income" is defined in 26

U.S.C. § 63 as "gross income" minus allowable deductions; and "gross income," in turn, is defined in 26 U.S.C. § 61 as "all income from whatever source derived," including income earned in the private sector.  Here, the government presented ample evidence that Toppin earned taxable income in 1997-1999 from the Pelletizer Group, Toppin Enterprises, and the Amherst rental property, and that he failed to pay federal income taxes on that income.  The evidence included Forms 1040 filed by Toppin, signed under penalty of perjury, on which he admitted owing $86,909 for 1997; $139,208 for 1998; and $1,082 for 1999.  [G.App.136-42].

### C.    <u>The District Court Properly Refused Toppin's Proffered Instruction on Willfulness.</u>

Toppin also contends that the district court erred in refusing to give a jury instruction based on the following statement in *Bryan v. United States*, 524 U.S. 184 (1998):  "In certain cases involving willful violations of the tax laws, we have concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating."  *Id.* at 194 (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)).  (Brief at 19).  This challenge is reviewed for plain error because Toppin did not object to the court's refusal to give his proposed instruction based on *Bryan* after the jury was instructed and before deliberations began.  *See Meadows*, 571 F.3d at 146; [G.App.767-71].

31

The requested instruction was properly refused because it incorrectly stated the law. *See Mehanna*, 735 F.3d at 50 (district court not required to give proffered instructions containing "legally flawed propositions"). As this Court explained in rejecting a similar instruction request:

> The second sentence in the requested instruction – "For any law the government asserts the defendant knew, the government must prove beyond a reasonable doubt that the defendant knew it" – is misleading and was properly refused. It implies that the government's burden was to prove that the defendants knew of the *particular* statutes and regulations obligating them to pay income taxes and file returns. But knowledge of the law's demands does not depend on knowing the citation any more than ability to watch a program on TV depends on knowing the frequency on which the signal is broadcast.

*United States v. Allen*, 670 F.3d 12, 18 (1st Cir. 2012) (internal quotation marks and citations omitted). "Nor did the Supreme Court suggest otherwise in *Bryan v. United States*, 524 U.S. 184, 194-95 (1998). Rather, it is 'aware[ness] of the duty at issue' that is required in tax prosecutions …." *Id.* at 18 n.4 (quoting *Bryan*, 524 U.S. at 195 n.22).

Here, the district court properly instructed the jury that the government had to prove that Toppin knew he had a legal duty to pay a tax on the money he made. The court stated: "The defendant acted willfully if the law imposed a duty on him, he knew of the duty, and he voluntarily, intentionally violated that duty."

[G.App.761].   The court also properly instructed the jury that Toppin had to subjectively intend to violate his known legal duty.   It stated:   "The burden to prove intent, as with all other elements of the crime, rests with the government. This is a subjective standard.   What did the defendant honestly believe, not what a reasonable person would have believed."   [G.App.761].   These instructions accurately reflected the applicable law and the district court did not err in refusing to give the alternative (and incorrect) instruction Toppin proposed.

## IV.   THE GOVERNMENT DID NOT MISSTATE THE EVIDENCE RELATING TO TOPPIN'S GOOD-FAITH BELIEF DEFENSE.

### (Toppin's Argument Eight)

Finally, Toppin contends that the government improperly misrepresented evidence in its possession in arguing that there was no support for Toppin's claim that, during the relevant period, he held a good-faith belief that he did not owe the taxes the IRS was seeking to collect.   (Brief at 20-21).   This argument is unpreserved and in any event unavailing.

### A.   Procedural History

A central component of Toppin's defense was that he held a good-faith belief that he did not owe the taxes the IRS was seeking to collect and thus could not be guilty of willfully evading them.  [G.App.542-43, 737-40].  The government

33

took the position, however, that Toppin's good-faith defense had been concocted in response to the IRS's criminal investigation, and that his claim to have held a good faith belief that he did not owe taxes during the time relevant to the indictment was not credible.  [G.App.282, 298-99, 305-07, 315-16, 318, 320-44, 369-70, 380-81, 384-86, 420-21, 448-61, 482-83, 527].

The government argued this position in both its opening and closing arguments.  In its opening, for example, the government acknowledged Toppin's grand jury testimony in which he had stated that the Tax Code did not apply to him, but stated that there was "no evidence" that Toppin "ever communicated this supposed belief to the IRS or to anyone involved in his financial affairs prior to the initiation of the criminal investigation."  [G.App.101].  Similarly, the government argued in its closing that Toppin's conduct prior to the commencement of the investigation did not support his defense:

> Did the defendant have a good-faith, honest, sincere belief that the tax code didn't apply to him?  That's the question for you.
>
> Ladies and gentlemen, how do you know that he did not have such a belief sincerely held?  Well, three main reasons:  He hired an accountant to prepare his returns. He filed returns admitting that he owed income taxes. And he never told anybody about this alleged belief that the tax code didn't include him.

[G.App.720].[14]

Toppin did not object to these statements when made but, in a post-trial motion, contended that the government's statements in its opening and closing misrepresented the evidence.  [D.202].  Specifically, Toppin contended that the government's statements were inconsistent with the trial testimony of Patricia Hall Strong, Toppin's accountant in the late 1990s.  [D.202 at 4-5].  The government opposed the motion, arguing that Strong's statements at trial did not support Toppin's position, [D.211 at 6-8], and the district court denied the motion.  [D.28 (denying D.202)].

**B.    Standard of Review**

Toppin did not contemporaneously object to the government statements he now challenges but, instead, challenged them for the first time in a post-trial motion.  His objections are therefore unpreserved and reviewable only for plain error.  *See United States v. Kasenge*, 660 F.3d 537, 541 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1649 (2012).

---

[14]In addition, as Toppin notes, the government made statements out of the hearing of the jury, such as during the *Daubert* hearing, consistent with this position.  (Brief at 21).

**C.**    **The Government Did Not Misstate the Evidence.**

According to Toppin, the government's statements disclaiming the existence of evidence to support his good-faith defense were improper because they were contradicted by information in the government's possession, specifically, a five-page memorandum (which the government timely produced to the defense in discovery) summarizing an interview that IRS agents conducted in 2008 with government trial witness Strong.  (Brief at 20-21).  As a threshold matter, the government notes that this argument is a different one than Toppin made below.  In his post-trial motion, Toppin made the familiar argument that the government had misrepresented Strong's trial testimony.  [D.202 at 4-5]; *see, e.g.*, *Olszewski v. Spencer*, 466 F.3d 47, 59-60 & nn.12-13 (1st Cir. 2006) (discussing claim that government misstated the evidence at trial and citing cases).  Now, however, Toppin's argument appears to be that the government violated a duty of candor owed to the court by making statements inconsistent with information contained in the memorandum, without regard to whether that information appeared in Strong's trial testimony.[15]

---

[15]In fact, it appears that Strong's testimony at trial did not precisely mirror the statements attributed to her in the IRS interview memorandum.  [*See* G.App.291-95].

36

Toppin does not cite to any case for the proposition that the government had an obligation to avoid taking a position at odds with an out-of-court statement of one of its witnesses.  But that issue is in any event not presented here, because the government's statements were not incompatible with those in the Strong memorandum.  As Toppin notes, the memorandum reflected that Strong told the agents that Toppin said in the late 1990s that he "does not believe in paying taxes" and that "through people in Amway he learned about his constitutional right not to pay taxes."  (Brief at 20).  These statements are not at odds with the government's assertion that Toppin had not, prior to the IRS investigation, adopted the view that the Tax Code simply did not apply to him.  Not believing in paying taxes is different from believing that you are not subject to the Tax Code.  You can "not believe" in stopping at a red light in the absence of traffic, yet still understand that the traffic laws apply to you and you are required to stop.  Nor would Toppin's alleged belief that he had a constitutional right not to pay taxes equate to a belief that the Tax Code did not apply to him.  The former would not have been a legally sufficient defense.  *See United States v. Allen*, 670 F.3d 12, 14 n.1 (1st Cir. 2012) (citing *Cheek v. United States*, 498 U.S. 192, 202 n.8 (1991)).  The latter could be. *See id.* (a person has a good-faith belief "if he honestly believes, based on a misreading of the tax laws, that he owes no taxes").

37

Toppin's counsel was, of course, free to cross-examine Strong with the above two statements from the 2008 memorandum of interview and indeed did so, eliciting her agreement, that, although she could not recall five years after the interview, it was "possibl[e]" that she had reported to the agents that Toppin had told her he did not believe in paying taxes. [G.App.294].[16] Beyond that, however, the government had no occasion, and certainly no obligation, to address the memorandum's contents. Nor did the government misstate the evidence when it said in its closing argument: "In 1998, [Toppin] hired Patricia Strong to prepare his returns for 1996 and 1997. You heard from Miss Strong. The defendant never told her that he believed the tax code didn't apply to him, that he believed he had no legal duty to pay taxes." [G.App.720]. As a result there was no error and certainly no plain error.

---

[16]To the extent Toppin contends that trial counsel was ineffective, either in failing to elicit further statements from Strong or in failing to object to government statements, that argument is not properly before the Court. *See United States v. Maldonado*, 708 F.3d 38, 45-46 (1st Cir. 2013) (noting that the Court's "practice is not to review ineffective-assistance claims on direct review").

## **CONCLUSION**

For these reasons, the government respectfully requests that the Court affirm

the judgment.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    */s/ Christine J. Wichers*
CHRISTINE J. WICHERS
Assistant U.S. Attorney

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limitation**
**Typeface Requirements, and Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,514 words (an opening or answering brief may not exceed 14,000 words, a reply brief may not exceed 7,000 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2010.

*/s/ Christine J. Wichers*
CHRISTINE J. WICHERS
Assistant U.S. Attorney
Dated:  April 28, 2014

40

## CERTIFICATE OF SERVICE

I certify that, on April 28, 2014, I caused one copy of the foregoing document to be served by first-class mail on the pro se defendant-appellant, who is not a registered participant: David L. Toppin, 94036-038, USP Camp, P.O. Box 1000, Lewisburg, PA 17838-1000.


*/s/ Christine J. Wichers*
CHRISTINE J. WICHERS
Assistant U.S. Attorney

41